171886 Darrow C. Coskery v. Nancy A. Berryhill Mr. Fenner, if you're ready, we're ready. Good morning. I'd like to reserve two minutes for rebuttal, please. You may have it. Thank you. May it please the Court. Social Security Ruling 16-3P is applicable to this case upon review as a subsequent clarification of the Social Security Administration's existing regulations regarding evaluation of subjective symptom testimony, based upon the reasoning set forth by the Seventh Circuit in Pope and by this Court in Avery. The ruling was not preceded by any change in the agency's underlying regulations and clarifies that subjective symptom evaluation is not an examination of an individual's character or truthfulness in the manner typically used during adversarial litigation and should be limited to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. Can I ask you just a, it's a hypothetical, because you may think that this ruling is different than the hypothetical I'm going to ask you about, but the possibility that it might be the same as the hypothetical I wanted to ask it. Suppose we had this exact same ruling, and it is, I thought, a clarification of the regulation, but suppose it said expressly, this shall not be applied by our adjudicators until two years hence. Well, I think that pursuant to that hypothetical, the reasoning in Pope would still indicate that as a clarification of what the existing regulations and law means, that it would still be applied upon review. Give me the mechanism by which that could happen, because you couldn't say that was the agency's intention. The agency would have made it perfectly clear that it intended for you not to do that by saying, don't apply it until two years hence. So would the idea be that that would just undermine the prior ruling so that we wouldn't defer to it, and that we should just go? I'm trying to understand, what is the legal mechanism by which we could make an SSR that the agency has told its adjudicators not to consider it? I realize you make an argument that they didn't say that, but if I were of the view that they did effectively say that, what is the problem that follows from that? I can see that it is strange for an agency to have out there two different views of what the regulation means, one of which is the more recent one, which it says is the better view, and also tells people not to look at it. That's an odd circumstance. But why does that oddity help you? That's what I'm trying to figure out. Well, essentially because this is, there's some differences in terminology here. There's a lot of discussion about retroactive applicability of regulations, and this isn't really about retroactive applicability, because this is, as we've just discussed a bit, a clarification of the agency's existing regulations and the existing law. I'm trying to know why that matters from the adjudicator's perspective. If he correctly read the new SSR, it was not meant to be applied at that time by the adjudicator. The adjudicator didn't violate the SSR by not applying it. So that's not the problem. Well, the SSR didn't even exist.  So what did the adjudicator do wrong? He applied the SSR that he had, and he determined whether there's substantial evidence under that SSR. Now there's a new SSR, which if we pause it, says don't look at it until X date. Why do we care about it? Here's, I think, the distinction, and I do, as I indicated, I think there are certainly a number of cases that were decided under the old SSR, and they use the term credibility that don't really run afoul of what's said in SSR 16-3P about evaluating an individual's character for honesty or truthfulness in the manner used in adversarial litigation. Plenty of administrative law judges' decisions that were issued under the old SSR, even though they talked about credibility, they didn't do that. They were looking at the consistency of the claimant's testimony regarding their symptoms with the evidence of record, and not doing what was done in this case, for example, finding that my client was not entirely credible is the language here, because he testified in response to a question from the ALJ that he had not used any illegal drugs, including marijuana, since his alleged disability onset date in 2009, which was contrary to evidence of positive screenings for marijuana in his medical records. Basically, that finding in the ALJ's associated statement that Mr. Coskery was noncompliant with treatment due to evidence of those positive screenings was entirely irrelevant to the evaluation of Mr. Coskery's testimony regarding his symptoms. I take the point about the lying about it, why you might think that that's a problem. Why would the noncompliance be a problem? Because wouldn't it suggest, if I'm not complying with the treatment regimen, at least potentially, that my claim about the severity of my symptoms aren't all that I'm saying they are, since I'm not doing what I would need to do to get them treated? The noncompliance here, and there's really only one piece of any of those records cited by the ALJ that suggests anything along the lines of noncompliance, essentially it's because they were prescribing opioid painkillers to Mr. Coskery, and so their policy was if you have a positive screening for any controlled substance, any non-prescribed controlled substance, we are not going to keep prescribing these to you if it shows up again. There's no suggestion there that his treatment was being impeded in any way. That would impede it. He knows that if he keeps using the marijuana, he won't get the opiates. The opiates are to mitigate the severity of the pain, so why couldn't one deduce, well, if he's still willing to do the violation that will keep him from getting the opiates, the pain must not be as severe as he's suggesting. It's debatable, but why isn't that a plausible inference? Well, there was, for one thing, he was never actually, in the record here, he was never actually, he never was actually cut off. There's a warning letter in the record from one of his providers from back in, I believe, 2009 or 2010, saying if you have another positive screening, we won't prescribe any more of these painkillers for you. Why would he so follow that you could infer that he must not have thought that they were that severe if he was still willing to risk being cut off? We would say it's dispositive, but it seems like some evidence in favor of the government's position, doesn't it? Well, I think the issue with the ALJ citing noncompliance is, he's citing noncompliance as a rationale for finding that the symptoms aren't as severe as Mr. Coskery testified. And there's notes from the providers in there saying we really don't have any, he's had these screenings, but we really don't have any concern about him misusing anything that we've prescribed. And he was never, I mean, this hearing happened five years later, and he had not been cut off of any prescribed medication. Okay, thank you. Good morning, Your Honors, and may it please the Court, my name is Christopher Potter, and I represent the Commissioner of Social Security. The best reason to not apply the new SSR to older ALJ decisions on judicial review is based on the clearly established principle that the federal courts have universally agreed upon of considerable deference to the language within the SSRs. And in this case, the new SSR asks the courts specifically to not apply the new SSR to older. Do you see the strangeness of what you're asking the court to do? I just don't understand what the agency's up to here. You ask us to defer to your SSR on the theory that it's just clarifying the reg. That's the first SSR, right? Yes. Because if it's making something new, you can't do it through an SSR, presumably. You'd probably have to use notice and comment. I believe that's probably correct, Your Honor. Okay, so the first one's just clarifying the reg. Then you come out with another one that you say, actually, this is better. Here's a really good clarification. And then you're telling courts, don't look at that. Defer to our concededly worse clarification of the regulation. That's what it seems like to me, and I don't understand what the agency's up to in doing that. If you have a better clarification, why do you not want us? Well, Your Honor, I think that part of the reason is based in what this court recognized in Middlesex-Yampfell, that there's a problem in terms of administrative workload of the agency if a lot of cases are suddenly going to be remanded on the basis of an interpretation that the ALJs didn't have the opportunity to consider or review or know about at the time. Does that mean then that your new interpretation has now changed the agency's view, right? It's partially changed, Your Honor, yes. Then if you've changed it in some way, how come you're able to do that without notice and comment? So you have one idea of the reg. Now you've got a new idea of the reg, and you can make that substantive change without notice and comment? Your Honor, I think that's a very interesting question, and unfortunately I am not aware of what exactly triggers notice and comment and a new regulation and what exactly would not trigger such requirements. Put aside notice and comment. You don't think it affects how much deference we should give the first one? The fact that we know this agency no longer thinks that's a particularly good interpretation? Well, Your Honor, I think it's... I mean, at that point, why don't we just look at the agency has contradictory views, so we'll just look at the reg and figure out for ourselves what the best view is taking everything into consideration. Your Honor, I wouldn't phrase it in terms of one regulation, excuse me, one SSR is better than the other SSR. Rather, the preamble to the new SSR explains that SSA has decided to... You couldn't be clearer that you think it's better. You consulted with ACUS. You got all their advice about it. You took it to heart. It was very admirable, and you came up with a better view of the reg. You realized that you were talking about credibility when the reg didn't mention credibility, so you want to strike that, and you say all these things, and yet you have the court defer to the agency's application of what you've told us isn't a very good interpretation. It seems so odd. Your Honor, I... You're right to the second interpretation. Why did you do it? I mean, you've got an argument that the first time you explained it was adequate. One might think that was a good argument. Maybe not. But why did you... Why did the agency come along with the second explanation? Your Honor, I think that as far as I'm aware, it's simply because of the recommendation of ACUS, and I'm sure that that recommendation caused a lot of review within the policymaking on it. How did ACUS get it? Didn't you go to ACUS? I don't know, Your Honor. I'm not aware of the details of that. Nevertheless... Is there any form of history here? I mean, I'd hate to call it legislative history. Let's call it administrative history as to the reasons for the updated information. Your Honor, I'm not personally aware of any reasons beyond what's in the text of the new SSR itself, unfortunately. But nevertheless... Here's what it said. No, that's what it says in the SSR. It says, we are rescinding SSR 96-7-P. We solicited a study and recommendation from ACUS on the topic of symptom valuation. So you guys thought we should get a better view. ACUS comes back and gives it to you, and on the basis of that, you're now clarifying things. And yet you're saying to the courts, you did all that work, but go ahead and review these under what we now know isn't a very good interpretation. That just seems... I don't know, maybe it doesn't matter in this case, because under the new interpretation, it's the same outcome. And I understand that, but I'm just trying to understand what's happening. Because you set this later effective date for clarification, and I guess you're entitled to do that in terms of what your adjudicators are supposed to do, but I don't see why that should bind courts to be stuck with an agency's interpretation it's walked away from. Well, Your Honor, I would note that the use of credibility, which under the previous SSR certainly made room for an evaluation of a claimant's character, in addition to evaluation of statements that are more specifically tied to symptoms. The courts have upheld this kind of character evaluation where it's certainly been accompanied by more medically-based evaluations. And it would be certainly a big administrative problem of the kind that the court recognized in Mills v. Apfel for large numbers of ALJ decisions. I mean, there are hundreds of thousands of these per year to be sent back for further proceedings. And I think that it's also worth bearing in mind that there's probably going to be a pretty narrow range of cases where the text of the new SSR is going to make a difference. It certainly wouldn't be that big of a burden. Well, I honestly couldn't really estimate it, Your Honor. Even the cases that my office sees is just a small subset of all of the ALJ decisions, most of which never go up on judicial review. And but in this case, I would like to stress, the ALJ didn't – it's not reasonable to read the ALJ's decision as commenting on Mr. Coskery's character. Instead, the ALJ looks at the failure to follow medical advice of his treating physician, his positive tests for marijuana and THC. And both SSRs, both the old and the new SSR, require the ALJ to consider any explanations that the claimant may offer for failing to follow medical advice. And in this case, the claimant simply testified that he hadn't used any of those substances during the alleged disability period. The ALJ made no of that, but in passing, and certainly gave a number of other legitimate reasons for discounting Mr. Coskery's statements, even beyond this issue of failure to follow medical advice. Can you point us to any case in which we have something like this administrative statement that we expect the courts to pay deference to our view of this? Your Honor, I'm not aware of one, and I think that – this is my speculation only – that the agency, I think, was probably taken by surprise by the number of claimants who are coming up and arguing for application of a new SSR to hold ALJ decisions. I'm not aware – I mean, there are a lot of SSRs out there. There are usually a couple published every year. And I'm not aware of any kind of volume like this, where the claimants have been asking that the new SSR be applied in the past. And there's been a great deal of litigation probably every circuit about this. And so I think that that was most likely what was behind the agency coming out with a republication of the new SSR in 2017, saying – sort of highlighting that the effective date is the same thing as the applicable date, which is March of 2016, which post-dates the ALJ decision in this case. Okay. And I see that my time has expired, so we would ask that the Court affirm the ALJ's decision on substantial evidence review. Thank you. Just to cover the issue of whether there's a harmless error here, the ALJ's other reasons for his evaluation of Mr. Cosgrey's testimony are not supported by substantial evidence in this case. So the error is not harmless. And I would just go back and say that there's no other reason for the ALJ's findings about Mr. Cosgrey's testimony and drug screenings other than for an evaluation of his character. And the ALJ only states that he was noncompliant with treatment and then goes on to talk about those screenings and the false testimony. He doesn't draw any kind of logical bridge between what he sees as noncompliance and Mr. Cosgrey's symptoms. The ALJ's decision states that his findings regarding Mr. Cosgrey's daily activities were not outcome determinative. So the ALJ is acknowledging that in his decision. And in any event, as I've covered in more detail in my brief, the reported activities were not actually inconsistent with Mr. Cosgrey's testimony regarding his symptoms and limitations. The ALJ's findings regarding the treatment records of Drs. Jorgensen and Caldwell erroneously disregarded aspects of Dr. Jorgensen's records that were consistent with Mr. Cosgrey's testimony. And erroneously relied upon only certain portions of the opinion statements from Dr. Caldwell that, again, were dated five or more years prior to the hearing at which Mr. Cosgrey testified in this case. The agency's decision should be reversed, and the case should be remanded for evaluation of his testimony in accordance with the agency's regulations as clarified by SSR 16-3P. Thank you.